IN THE UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF DELAWARE

DIWANN MATHIS

MARKETA MATHIS,

    Plaintiffs,

v.

                                                 C.A. No. 25-cv-805-CFC

FRIERE CHARTER SCHOOL,

    Defendant.

**FILED**

**FEB 13 2025**

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**PLAINTIFFS' MOTION TO STRIKE DEFENDANT'S MOTION FOR SANCTIONS (D.I. 51) FOR FAILURE TO COMPLY WITH RULE 11(c)(2), LACK OF SERVICE, AND LACK OF JURISDICTION; REQUEST FOR EVIDENTIARY HEARING; REQUEST FOR SANCTIONS AGAINST COUNSEL; AND NOTICE OF PENDING THIRD CIRCUIT WRIT PETITION**

Plaintiffs DiWann Mathis and Marketa Mathis, proceeding pro se, respectfully move this Court to strike Defendant's Motion for Sanctions (D.I. 51) and supporting brief (D.I. 51-1). Counsel's motion fails on multiple independent threshold grounds — any one of which requires that it be stricken — before the Court reaches the substance. Plaintiffs further request sanctions against counsel under 28 U.S.C. § 1927 and request that this Court initiate sanctions under Rule 11(c)(3) on its own initiative. Plaintiffs further notify this Court that an Emergency Petition for Writ of Mandamus and Writ of Prohibition, together with an Emergency Motion for Stay, has been filed in the United States Court of Appeals for the Third Circuit concerning the matters raised herein.

**I. NOTICE OF PENDING THIRD CIRCUIT PROCEEDINGS**

1

1. ***On February 9, 2026, Plaintiffs filed an Emergency Petition for Writ of Mandamus and Writ of Prohibition, in addition to a Motion for Sanctions in the United States Court of Appeals for the Third Circuit.***

2. On the same date, Plaintiffs filed an Emergency Motion for Stay of District Court Proceedings pending resolution of the writ petition.

3. The Third Circuit petition seeks:

a. A Writ of Mandamus directing this Court to vacate D.I. 52; b. A Writ of Prohibition barring this Court from taking further action on D.I. 51 or any related matters; c. An immediate stay of all proceedings in this case; d. Sanctions against counsel under 28 U.S.C. § 1927 and Fed. R. App. P. 46(c); e. Referral of counsel to the Third Circuit's disciplinary committee.

4. Plaintiffs file this Motion to Strike to preserve the record and to provide this Court an opportunity to address these issues in the first instance, while the Third Circuit petition remains pending.

5. Plaintiffs respectfully request that this Court take no action on D.I. 51 until the Third Circuit has ruled on Plaintiffs' Emergency Motion for Stay.

## II. INTRODUCTION

6. On January 30, 2026, at 1:47 AM, Defendant's counsel Kristen S. Swift filed a 28-page Motion for Sanctions (D.I. 51) that:

a. Was filed WITHOUT COMPLYING with Rule 11(c)(2)'s mandatory safe harbor; b. Targeted motions that had been WITHDRAWN the day before; c. Was filed in a court DIVESTED of jurisdiction; d. Was filed WITHOUT SERVICE on Plaintiffs; e. Sought relief designed to benefit

2

COUNSEL PERSONALLY — not her client; f. Sought a nationwide injunction that would infringe on a court of coordinate jurisdiction; g. Was filed AFTER the Pennsylvania Defendants in related federal litigation had been served with a Second Amended Complaint — and instead of entering an appearance to defend them, counsel chose retaliation in this closed case.

7. On January 30, 2026, at 11:52 AM — ten hours after counsel's 1:47 AM filing — this Court entered an Order (D.I. 52) declaring Plaintiffs' filings "frivolous and vexatious." Plaintiffs had no notice. Plaintiffs had no opportunity to respond. Plaintiffs learned of D.I. 51 and D.I. 52 only when they checked the docket days later.

8. D.I. 51 fails on four independent threshold grounds — any one of which requires that it be stricken:

a. SAFE HARBOR: Counsel did not comply with Rule 11(c)(2)'s mandatory 21-day safe harbor; b. JURISDICTION: This Court was divested of jurisdiction under Griggs; c. SERVICE: Counsel did not serve Plaintiffs; d. MOOTNESS: The motions counsel targeted had been withdrawn.

9. This Motion asks the Court to strike D.I. 51, vacate D.I. 52, and impose sanctions on counsel.

## III. THRESHOLD GROUND ONE: RULE 11(c)(2) SAFE HARBOR VIOLATION

10. Counsel's Motion for Sanctions must be stricken as a threshold matter because counsel failed to comply with the mandatory safe harbor provision of Rule 11(c)(2).

11. Rule 11(c)(2) provides: "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court

if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time that the court sets."

12. This provision is mandatory. The safe harbor requirement is "an absolute prerequisite" to a Rule 11 sanctions motion. See *Ridder v. City of Springfield*, 109 F.3d 288, 294 (6th Cir. 1997) ("Failure to comply with Rule 11's safe harbor provision precludes an award of sanctions."); see also *Roth v. Green*, 466 F.3d 1179, 1192 (10th Cir. 2006) ("[S]trict compliance with Rule 11(c)(2)'s safe harbor provision is mandatory and a prerequisite to an award of Rule 11 sanctions.").

13. Counsel did not serve Plaintiffs with D.I. 51 at any time — let alone 21 days before filing it with the Court. As established in Section V below, Plaintiffs never received D.I. 51. The Certificate of Service is false.

14. Even accepting counsel's false Certificate of Service at face value, counsel "served" and filed D.I. 51 on the same date — January 30, 2026. There was no 21-day waiting period. There was no opportunity for Plaintiffs to withdraw or correct any challenged filing. Counsel filed the motion with the Court simultaneously with — or before — any purported service on Plaintiffs.

15. The purpose of the safe harbor is to give the opposing party an opportunity to withdraw the challenged filing before sanctions are imposed. Here, Plaintiffs had already withdrawn their post-judgment motions on January 29, 2026 — the day BEFORE counsel filed D.I. 51. The motions counsel sought to sanction no longer existed. Counsel filed anyway, without providing the safe harbor required by Rule 11(c)(2).

16. On February 7, 2026, Plaintiffs sent an email to counsel containing the text of Rule 11(c)(2) and providing 48 hours — until Monday, February 9, 2026, at 5:00 PM EST — to withdraw D.I. 51. See Exhibit B. Counsel did not withdraw.

17. Counsel's failure to withdraw after receiving actual notice of the Rule 11(c)(2) defect eliminates any defense of inadvertence or oversight. Counsel knew the safe harbor was required. Counsel knew she had not complied. Counsel chose to persist.

18. D.I. 51 is procedurally defective and must be stricken on this basis alone. The Court need not reach the substance of counsel's motion.

## IV. THRESHOLD GROUND TWO: THE COURT LACKS JURISDICTION

### A. Griggs Divestiture

19. "The filing of a notice of appeal is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).

20. Plaintiffs filed their Notice of Appeal on January 8, 2026. D.I. 43.

21. The Third Circuit issued a Rule 4(a)(4) order on January 20, 2026, staying the appeal pending resolution of Plaintiffs' post-judgment motions.

22. On January 29, 2026, Plaintiffs withdrew their post-judgment motions. D.I. 50.

23. When Plaintiffs withdrew those motions, the basis for the Rule 4(a)(4) stay ceased to exist. The stay lifted automatically when the triggering condition — pending post-judgment motions — was removed.

### B. The Sanctions Motion Was Not Within the Scope of the Stay

24. Counsel's Motion for Sanctions (D.I. 51) was a NEW motion, not one of the post-judgment motions subject to the Rule 4(a)(4) stay. The stay applied only to "the matters being appealed" — i.e., the post-judgment motions that Plaintiffs had filed. A new sanctions motion filed by opposing counsel is not within the scope of that stay.

25. The defense may argue that jurisdiction had not formally returned to the Third Circuit because Plaintiffs' withdrawal was filed only eleven hours before counsel's sanctions motion. This argument fails.

26. Griggs divestiture is automatic upon the triggering event. Once Plaintiffs withdrew their post-judgment motions, there was nothing left for this Court to decide. Jurisdiction returned to the Third Circuit by operation of law. No formal order was required.

27. D.I. 52, entered January 30, 2026, was entered without jurisdiction.

28. An order entered without jurisdiction is void. See *Willy v. Coastal Corp.*, 503 U.S. 131, 137 (1992).

## V. THRESHOLD GROUND THREE: LACK OF SERVICE

### A. The Certificates of Service Are False

29. D.I. 47 (filed January 20, 2026) contains a notation: "cc: plaintiffs via e-mail only." Plaintiffs never received this filing.

30. D.I. 51 (filed January 30, 2026) contains a Certificate of Service stating that counsel served Plaintiffs via email. Plaintiffs never received this filing.

31. D.I. 51-1 (filed January 30, 2026) contains a Certificate of Service stating that counsel served Plaintiffs via email. Plaintiffs never received this filing.

### B. Counsel's Email Functions Properly

6

32.On February 3, 2026, Plaintiffs sent an email to counsel regarding a related matter.

33.Counsel responded the same day. See Exhibit A.

34.Counsel's email functions properly. She receives emails from Plaintiffs and responds promptly.

35.The question is whether counsel sent the emails she claims to have sent. Plaintiffs submit she did not.

## C. The Pattern of Non-Service and Ex Parte Rulings

36.This is not an isolated incident. Counsel has established a pattern:

First motion — Not served on Plaintiffs — No due process provided — Ruled for Defendant D.I. 51 — Not served on Plaintiffs — No due process provided — Ruled for Defendant (D.I. 52)

37.The pattern is clear: counsel files without service, the Court rules without notice to Plaintiffs, and Plaintiffs learn of adverse rulings only after the fact.

38.On February 6, 2026, the Third Circuit Court of Appeals required counsel to enter an appearance in Case No. 26-1063. As of the date of this filing, Plaintiffs have not received a certificate of service indicating that counsel has complied with the Third Circuit's order.

## D. Service Under Rule 5

39.Federal Rule of Civil Procedure 5(b)(2)(E) permits service by "sending it to a registered user by filing it with the court's electronic-filing system or sending it by other electronic means that the person consented to in writing."

40.Plaintiffs are pro se litigants who are not registered CM/ECF users in this Court. Service by electronic filing does not constitute service on Plaintiffs.

7

41.If counsel served by "other electronic means" (i.e., email), counsel must be able to demonstrate that the emails were actually sent and delivered.

### E. Due Process Requires Actual Notice

42."An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

43.A ruling entered without notice to the affected party violates due process.

44.D.I. 52 was entered without notice to Plaintiffs.

## VI. THRESHOLD GROUND FOUR: MOOTNESS

45.On January 29, 2026, Plaintiffs withdrew their post-judgment motions (D.I. 39, 40, 41) by filing D.I. 50.

46.Counsel's Motion for Sanctions (D.I. 51) was filed on January 30, 2026 — the day AFTER Plaintiffs withdrew the motions counsel purported to address.

47.The motions counsel sought to sanction no longer existed when counsel filed D.I. 51. There was nothing to sanction.

## VII. THE TIMELINE

48.The following timeline demonstrates both the impossibility of meaningful response and counsel's ulterior motive:

Dec 22, 2025 — Court dismissed case for lack of venue — counsel's client's case OVER Jan 8,

2026 — Plaintiffs filed Notice of Appeal (D.I. 43) — Appeal initiated Jan 10, 2026 — Plaintiffs notified counsel she would be named as Defendant in related federal litigation Jan 16, 2026 — Plaintiffs sent detailed letter to counsel and firm leadership Jan 20, 2026 — Third Circuit issued Rule 4(a)(4) stay pending post-judgment motions Jan 23, 2026 — Court granted counsel's extension, set answering brief due 2/18/2026 Jan 26, 2026 — Plaintiffs filed Second Amended Complaint in M.D. Fla. (Case No. 8:25-cv-3334) and served the PA Defendants — Freire Schools, Davenport, and Botwinik — at the Collaborative's Philadelphia headquarters Jan 29, 2026 — Plaintiffs withdrew post-judgment motions (D.I. 50) — stay lifted — docket clear Jan 30, 2026, 1:47 AM — Counsel filed D.I. 51 — AFTER withdrawal, AFTER PA Defendants served, no safe harbor, no service Jan 30, 2026, 11:52 AM — Court entered D.I. 52 — 10 hours, no notice, no briefing Feb 3, 2026 — Counsel responded promptly to Plaintiffs' unrelated email — email works Feb 6, 2026 — Third Circuit required counsel to enter appearance Feb 7, 2026 — Plaintiffs sent second letter to firm leadership (Dolowich and Kaufman) Feb 7, 2026 — Plaintiffs sent email to counsel with Rule 11(c)(2) text and 48-hour notice Feb 9, 2026, 5:00 PM — 48-hour deadline expired — counsel did not withdraw

49. The Court ruled ten hours after counsel's 1:47 AM filing. Even if service had been made at 1:47 AM, Plaintiffs would have had no meaningful opportunity to respond before the 11:52 AM ruling.

50. But service was NOT made. Plaintiffs received nothing.

## VIII. COUNSEL'S ULTERIOR MOTIVE — RETALIATION, NOT ADVOCACY

### A. Counsel Has a Personal Interest in the Outcome of D.I. 51

51. Counsel is a named Defendant in related federal litigation — *Mathis et al. v. Freire*

9

*Schools et al.*, Case No. 8:25-cv-3334 (M.D. Fla.) — arising from her conduct during this Delaware case. Plaintiffs notified counsel of this on January 10, 2026.

52. On January 16, 2026, Plaintiffs sent a detailed letter to counsel and Kaufman Dolowich LLP leadership — Co-Managing Partners Ivan Dolowich and Michael Kaufman — explaining the basis for the claims against counsel. Neither the firm nor counsel took any corrective action.

53. On February 7, 2026, Plaintiffs sent a second letter to firm leadership providing a final opportunity to review counsel's conduct. The firm has taken no action.

## B. Counsel's Client No Longer Needed Protection

54. On December 22, 2025, this Court dismissed the case against counsel's client for lack of venue.

55. On January 8, 2026, Plaintiffs filed a Notice of Appeal.

56. On January 29, 2026, Plaintiffs withdrew their post-judgment motions.

57. As of January 29, 2026, there was nothing pending in this case. Counsel's client faced no active litigation here. Counsel had no legitimate reason to file anything on her client's behalf.

## C. The PA Defendants Were Served — Counsel Chose Retaliation Over Representation

58. On January 26, 2026, Plaintiffs filed the Second Amended Complaint in *Mathis et al. v. Freire Schools et al.*, Case No. 8:25-cv-3334 (M.D. Fla.), and served the Pennsylvania Defendants — Freire Schools (the network), Davenport, and Botwinik — at the Collaborative's Philadelphia headquarters.

59. Counsel acknowledged the Second Amended Complaint in her sanctions motion,

referencing its contents and stating that Plaintiffs "added RICO claims against Freire's Defense Counsel in this action." D.I. 51-1, p. 6. Counsel thus knew, when she filed D.I. 51 on January 30, 2026, that the network and its employees had been sued AND served in the Florida action.

60. Counsel's response to learning that the parties she actually serves had been sued and served was not to enter an appearance in the Middle District of Florida to defend them. It was to file a retaliatory sanctions motion in this closed Delaware case — seeking a court order that would extinguish the very claims the PA Defendants had just been served with.

61. An attorney whose client has been sued and served responds by entering an appearance and defending the client. An attorney engaged in retaliation responds by filing in a different court to make the case go away.

62. Counsel did not enter an appearance in Florida. The Florida action was filed on December 5, 2025. The Amended Complaint was filed December 22, 2025. The Second Amended Complaint was filed January 26, 2026. The network — Freire Schools — has been a named Defendant throughout. At the time of the original filing and the first two amended complaints, counsel was not a Defendant in the Florida action. There was no conflict preventing her from entering an appearance on behalf of the network. She chose not to — because entering an appearance in Florida would require acknowledging the network relationship that she has sought to conceal throughout this litigation.

**D. Counsel Filed the Motion to Protect Herself — Not Her Client**

63. On January 30, 2026 — the day AFTER Plaintiffs withdrew their motions — counsel filed D.I. 51.

64. D.I. 51 was not designed to protect Freire Charter School Wilmington. The case against Freire was over.

65. D.I. 51 was designed to protect counsel personally:

a. The motion devotes substantial attention to litigation pending in another federal court where counsel is a named Defendant; b. Counsel sought a finding that claims in other proceedings are "frivolous" — for use as a defense where she is personally a Defendant; c. Counsel sought a nationwide pre-filing injunction — designed to prevent litigation against her from proceeding; d. Counsel sought an order directing ALL communications through her — even for parties she does not represent.

66. Counsel used her client's concluded case as a vehicle to obtain relief for herself.

### E. Counsel's Proposed Order Proves Self-Dealing

67. Counsel's Proposed Order (D.I. 51-5) reveals exactly what she asked this Court to sign:

a. **Subpart (A):** "Enjoined from making any further filings in this action or in any federal United States District Court against Freire, **its counsel**, or its employees, without seeking leave of this Court." Counsel drafted herself into the proposed order. "Its counsel" is counsel. She asked this Court to issue an order protecting her personally, under the guise of a client's sanctions motion. And "its employees" covers Davenport, Botwinik, Burgess, Murray, and Durant — the Defendants in the Florida action whom counsel expressly disclaimed representing;

b. **Subpart (B):** "Ordered to only contact Freire or its employees or representatives **through their Counsel.**" Counsel drafted an order making herself the exclusive gatekeeper for all communications with every Freire employee and representative — including individuals she has

repeatedly told this Court she does not represent. This would prevent the PA Defendants from receiving independent legal advice in the Florida action — advice that might lead them to cooperate with Plaintiffs or settle separately from counsel;

c. **Subpart (C):** "Ordered to pay for the costs and attorneys' expenses Defendant has incurred in making this Motion for Sanctions and replying to the multiple frivolous motions Plaintiffs put forth to this Court, including D.I. 15 . . . D.I. 23-24 . . . D.I. 29 . . . D.I. 30 . . . and D.I. 39-41." Counsel converted a sanctions motion into a fee petition for the entire Delaware litigation — not just the conduct she claims is sanctionable, but every motion Plaintiffs ever filed.

68. The Proposed Order cites "this Court's inherent power, and 28 U.S.C. § 1915(e)(2)(B)(ii)" as its legal basis. Section 1915(e)(2)(B)(ii) authorizes courts to dismiss IFP complaints that "fail to state a claim." It is a judicial screening tool for indigent filings — not a vehicle for opposing counsel to seek sanctions, injunctions, fee awards, and communication gating orders. Counsel cited a statute designed to protect indigent litigants as the basis for an order that would strip indigent litigants of access to federal courts nationwide.

## F. Counsel's D.I. 27 Contradicts Her Own Sanctions Motion

69. On November 7, 2025, counsel filed Defendant's Brief in Opposition to Plaintiffs' Motion for Temporary Restraining Order (D.I. 27). In that brief, counsel stated: "Freire indisputably did provide remote education to Plaintiffs' children (Botwinik Dec., ¶¶ 3-4, and Ex. A and B thereto)." D.I. 27, p. 5.

70. Less than three months later, the Botwinik Declaration attached to counsel's sanctions motion (D.I. 51-2) claims that Freire lacked capability to provide remote education.

13

71. Counsel told this Court under her signature that remote education was "indisputabl[y]" provided — then submitted a sworn declaration claiming it was not possible. An attorney cannot submit a declaration that contradicts her own prior representation to the same court. This is not a difference of characterization — it is an irreconcilable factual contradiction, signed by the same attorney, filed in the same case, before the same judge.

## G. Counsel Did Not Disclose Her Conflict of Interest

72. At the time counsel filed D.I. 51, she knew she was a named Defendant in related federal litigation.

73. Counsel did not disclose this conflict of interest to the Court.

74. Delaware Rule of Professional Conduct 1.7 prohibits an attorney from representing a client if "there is a significant risk that the representation of one or more clients will be materially limited by... a personal interest of the lawyer."

75. Counsel's personal interest in obtaining a "frivolous" finding for use in her own defense materially limited her representation of Freire Charter School Wilmington.

76. Counsel was obligated to disclose this conflict. She did not.

## H. Counsel's February 3 Email Confirms Consciousness of Guilt

77. On February 3, 2026, counsel responded to an email from Plaintiffs regarding service in the related federal litigation, stating: "I'm not a party to that action and neither is the firm." See Exhibit A.

78. This statement is false. Counsel is a named Defendant in that action.

79. Counsel cannot simultaneously:

a. File motions in this Court seeking findings to protect herself in related litigation; AND b. Claim she is "not a party" to that litigation.

## I. The Rule 4.2 Logical Trap

80. Counsel invoked Rule 4.2 of the Delaware Rules of Professional Conduct to block Plaintiffs' communications with Davenport, Botwinik, Burgess, Murray, and Durant — claiming they are "represented persons." D.I. 51-1, pp. 10-17.

81. Yet counsel has repeatedly stated: "I do not represent anyone in an individual capacity" and "I do not have authority to accept service on behalf of any individual." D.I. 27; D.I. 51-1.

82. These positions are irreconcilable. Counsel cannot simultaneously disclaim representing the individual defendants AND invoke Rule 4.2 to block contact with them as "represented persons." Rule 4.2 protects represented parties — if they are not counsel's clients, she has no standing to invoke it on their behalf.

83. The only way counsel's Rule 4.2 argument functions is if the network employees are her client's representatives — meaning the network and the charter school are a single enterprise. But counsel's client is Freire Charter School Wilmington. Davenport is the CEO of the Collaborative (a PA entity). Botwinik is the Collaborative's Managing Director (based in Philadelphia). Burgess, Murray, and Durant are Collaborative employees. If these individuals ARE counsel's client's representatives, then the Collaborative and Wilmington are a single enterprise — which is Plaintiffs' theory in the Florida action.

84. Counsel faces a binary with no third option: Either (a) the network employees are her

client's representatives — proving the single enterprise Plaintiffs allege — or (b) they are not her client's representatives — and the entire Rule 4.2 argument, the Botwinik declaration, and the sanctions motion are baseless. Either way, counsel's position in this Court is untenable.

## J. Counsel's Network Retention Explains Her Conduct

85. Counsel was retained by Freire Schools Collaborative — the Pennsylvania network entity — to represent Freire Charter School Wilmington. The Collaborative controls Wilmington as a Section 512(b)(13) controlled entity under the Internal Revenue Code, as confirmed by the Collaborative's own Form 990.

86. Counsel's retention was managed by Leigh Botwinik — a Collaborative employee, not an employee of counsel's client — who provided the sworn declaration attached to D.I. 51.

87. Counsel's conduct throughout this litigation — monitoring cases involving non-client parties, claiming "strain" from those cases, seeking relief that benefits non-client parties, and failing to enter an appearance in Florida when the network was sued — is consistent with counsel serving the network's interests rather than her nominal client's.

## K. Service on the PA Defendants Destroys Every Argument in D.I. 51

88. The fact that the PA Defendants had been served in the Florida action before counsel filed D.I. 51 exposes every argument in that motion as pretextual:

a. **"Harassment."** Counsel characterized Plaintiffs' communications with Davenport, Botwinik, and other Freire employees as "harassment." D.I. 51-1, pp. 10-17. But those individuals had been served as defendants in a federal lawsuit. Plaintiffs' communications with them were legitimate

16

pre-litigation and litigation communications with parties to pending federal proceedings — not harassment. Counsel knew they had been served because she acknowledged the Second Amended Complaint in her motion;

b. **Rule 4.2.** Counsel invoked Rule 4.2 in Delaware to block communications related to a Florida case. The PA Defendants had been served in Florida and needed to retain counsel in Florida — or respond to the Florida complaint. Counsel is not their Florida counsel. By invoking Rule 4.2 in Delaware, counsel was attempting to prevent the PA Defendants from receiving independent legal advice that might lead them to cooperate with Plaintiffs or settle separately;

c. **"Frivolous."** Counsel asked this Court to declare "frivolous" a complaint that another federal court had accepted for filing, that the Clerk of that Court had issued summonses for, and that defendants had been lawfully served with. A complaint that has been accepted, docketed, and served through the regular process of a federal court is not "frivolous" within the meaning of any sanctions standard;

d. **Nationwide injunction.** Counsel sought an injunction barring Plaintiffs from filing "in any federal United States District Court" after the PA Defendants had been served in the Middle District of Florida. The summonses had been issued. Service had been effected. The Florida action was live. Counsel was asking this Court to issue a prospective injunction that would retroactively interfere with valid service of process in a court of coordinate jurisdiction — relief a district court has no power to grant. *Kline v. Burke Constr. Co.*, 260 U.S. 226, 235 (1922).

## IX. COUNSEL'S REQUESTED RELIEF EXCEEDS THIS COURT'S AUTHORITY

### A. The Relief Sought

17

89. Counsel's Motion for Sanctions (D.I. 51) and Proposed Order (D.I. 51-5) seek:

a. A finding that Plaintiffs' filings are "frivolous and vexatious"; b. A nationwide pre-filing injunction barring Plaintiffs from filing in "any federal court" without prior court approval — with specific protection for "its counsel" (i.e., counsel herself); c. An order directing all communications with "Freire and its representatives" through counsel — even for parties counsel does not represent; d. Attorney's fees and costs for the entire Delaware litigation.

## B. A Nationwide Injunction Would Infringe on Courts of Coordinate Jurisdiction

90. Plaintiffs have pending litigation in the Middle District of Florida — *Mathis et al. v. Freire Schools et al.*, Case No. 8:25-cv-3334 — in which multiple defendants have been served.

91. If this Court grants counsel's requested nationwide pre-filing injunction, it would:

a. Bar Plaintiffs from prosecuting pending claims in a court of coordinate jurisdiction where defendants have been served; b. Effectively dismiss proceedings over which this Court has no authority; c. Retroactively interfere with valid service of process in another federal court; d. Allow counsel — who has a personal interest in the outcome — to use this Court to extinguish claims against herself in another forum.

92. Federal district courts are courts of coordinate jurisdiction. Neither has authority over the other.

93. "Where the jurisdiction of the federal court has first attached, that right cannot be arrested or impaired by any subsequent proceedings in another federal court." *Kline v. Burke Constr. Co.*, 260 U.S. 226, 235 (1922). See also *Laker Airways Ltd. v. Sabena*, 731 F.2d

909, 926-27 (D.C. Cir. 1984); *In re Prudential Ins. Co.*, 148 F.3d 283, 301 (3d Cir. 1998).

94. This Court has no authority to enjoin Plaintiffs from prosecuting claims in other federal courts or to issue orders that override the jurisdiction of a coordinate court.

95. If counsel believes claims pending in another court are frivolous, counsel's remedy is to file a motion in that court — where that court has jurisdiction to decide the question. Counsel has not done so. Instead, she sought relief in this closed case because the Florida court would require her to enter an appearance — and entering an appearance would require acknowledging the network relationship she has concealed.

## X. COUNSEL'S MOTION WAS DESIGNED TO DELAY THE APPEAL

96. On January 8, 2026, Plaintiffs filed a Notice of Appeal (D.I. 43), initiating Case No. 26-1063 in the Third Circuit.

97. On January 29, 2026, Plaintiffs withdrew their post-judgment motions (D.I. 50), creating a clean record for appellate briefing.

98. On January 30, 2026 — the day after Plaintiffs cleared the docket — counsel filed D.I. 51.

99. Counsel's motion was designed to delay the appellate process:

a. By filing a motion in this Court during an active appeal, counsel created a new issue; b. When this Court ruled on that motion (D.I. 52), it created a new adverse ruling; c. Plaintiffs must now either amend their appeal to challenge D.I. 52 — causing delay — or leave D.I. 52 unchallenged — allowing a tainted finding in the record; d. This cycle can repeat indefinitely, preventing the appeal from ever reaching briefing on the merits.

100. This is the second time counsel has employed this tactic. Counsel previously filed a

19

motion without serving Plaintiffs, and this Court ruled without providing Plaintiffs due process. Counsel has now repeated the exact same pattern.

## XI. THE "FRIVOLOUS" FINDING CONTRADICTS THIS COURT'S OWN RULING

101. On December 22, 2025, this Court issued D.I. 38, stating: "Plaintiffs say, and I agree, that they were Florida residents when the alleged violation of the McKinney-Vento Act occurred."

102. On January 30, 2026, this Court issued D.I. 52, declaring Plaintiffs' filings "frivolous and vexatious."

103. These two rulings are irreconcilable. This Court cannot acknowledge that a violation occurred and simultaneously declare that the case alleging that violation is frivolous.

104. D.I. 52 was procured through counsel's misconduct and should be vacated.

## XII. REQUEST FOR SANCTIONS AGAINST COUNSEL

105. Plaintiffs request sanctions against counsel under 28 U.S.C. § 1927, which provides: "Any attorney... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Section 1927 has no safe harbor requirement.

106. Plaintiffs alternatively request that this Court initiate sanctions against counsel under Rule 11(c)(3) on its own initiative, which also does not require the 21-day safe harbor. See Fed. R. Civ. P. 11(c)(3) ("On its own, the court may order an attorney... to show cause why conduct specifically described in the order has not violated Rule 11(b).").

107. Counsel has vexatiously multiplied proceedings by:

20

a. Filing a motion without complying with Rule 11(c)(2)'s mandatory safe harbor; b. Refusing to withdraw after receiving notice of the safe harbor defect on February 7, 2026; c. Filing a motion in a court divested of jurisdiction; d. Filing a motion after the matters it addressed had been withdrawn; e. Filing a motion without serving Plaintiffs — TWICE; f. Filing false Certificates of Service — TWICE; g. Failing to disclose a material conflict of interest; h. Seeking relief designed to benefit herself personally rather than her client; i. Drafting herself into the Proposed Order as a protected party — "its counsel" (D.I. 51-5, ¶ (A)); j. Citing a judicial screening statute for indigent filings (28 U.S.C. § 1915(e)(2)(B)(ii)) as the legal basis for attorney-initiated sanctions; k. Converting a sanctions motion into a fee petition for the entire Delaware litigation (D.I. 51-5, ¶ (C)); l. Submitting a representation to this Court that "Freire indisputably did provide remote education" (D.I. 27, p. 5) and then submitting a sworn declaration claiming the opposite (D.I. 51-2); m. Seeking relief that would exceed this Court's authority and retroactively interfere with valid service of process in a court of coordinate jurisdiction; n. Filing a retaliatory motion in a closed case instead of entering an appearance in the Florida court where the parties she actually serves had been sued and served; o. Forcing Plaintiffs to respond to a motion that should never have been filed; p. Forcing Plaintiffs to seek emergency relief in the Third Circuit; q. Delaying the pending appeal through manufactured district court proceedings.

108. Plaintiffs request the following sanctions:

a. Monetary sanctions payable to Plaintiffs in an amount to be determined by the Court; b. Monetary sanctions payable to the Court; c. Referral of counsel to the Disciplinary Board of the Supreme Court of Delaware for investigation of violations of the Delaware Rules of Professional Conduct, including Rule 1.7 (Conflict of Interest), Rule 3.1 (Meritorious Claims), Rule 3.3

21

(Candor Toward the Tribunal), Rule 3.4 (Fairness to Opposing Party), and Rule 8.4 (Misconduct); d. An order striking D.I. 51 in its entirety; e. An order vacating D.I. 52; f. Such other relief as the Court deems appropriate.

109. If this Court is going to consider sanctions against Plaintiffs, it must also consider sanctions against counsel. The Court cannot fairly evaluate whether Plaintiffs' filings are "frivolous" without also evaluating whether counsel's conduct is sanctionable.

## XIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1. DEFER ruling on D.I. 51 until the Third Circuit has ruled on Plaintiffs' Emergency Motion for Stay in Case No. 26-_____;

2. In the alternative, STRIKE Defendant's Motion for Sanctions (D.I. 51) and supporting brief (D.I. 51-1) for failure to comply with Rule 11(c)(2)'s mandatory safe harbor provision;

3. In the further alternative, STRIKE D.I. 51 for lack of jurisdiction, lack of service, and mootness;

4. VACATE the Order entered at D.I. 52, which was based on a procedurally defective motion, entered without notice to Plaintiffs, without jurisdiction, and in violation of due process;

5. IMPOSE SANCTIONS on counsel Kristen S. Swift under 28 U.S.C. § 1927 for vexatiously multiplying proceedings;

6. In the alternative, INITIATE SANCTIONS against counsel under Rule 11(c)(3) on the Court's own initiative;

22

7. REFER counsel to the Disciplinary Board of the Supreme Court of Delaware;

8. DENY counsel's request for a nationwide pre-filing injunction as exceeding this Court's authority and as an improper attempt to interfere with valid service of process and pending proceedings in a court of coordinate jurisdiction;

9. GRANT such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *DiWann M. Mathis*

DiWann M. Mathis, Pro Se
mathisadlitem@gmail.com

Dated: February 10, 2026

/s/ *Marketa I. Mathis*

Marketa I. Mathis, Pro Se
mathisadlitem@gmail.com

Dated: February 10, 2026

23